NOTICE

*Memorandum decisions of this court do not create legal precedent. A party wishing to cite a memorandum decision in a brief or at oral argument should review Appellate Rule 214(d).*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| AMBER B. (Mother), | ) | Supreme Court Nos. S-14195/S-14355 |
| | ) | (Consolidated) |
| Appellant, | ) | |
| | ) | Superior Court No. 3AN-08-00088 CN |
| v. | ) | |
| | ) | <u>MEMORANDUM OPINION</u> |
| STATE OF ALASKA, DEPARTMENT | ) | <u>AND JUDGMENT</u>* |
| OF HEALTH & SOCIAL SERVICES, | ) | |
| OFFICE OF CHILDREN'S SERVICES, | ) | No. 1418 - April 16, 2012 |
| | ) | |
| | ) | |
| Appellee. | ) | |
| | ) | |
| ARLENE B. (Grandmother), | ) | Superior Court No. 3AN-08-00089 CN |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| STATE OF ALASKA, DEPARTMENT | ) | |
| OF HEALTH & SOCIAL SERVICES, | ) | |
| OFFICE OF CHILDREN'S SERVICES, | ) | |
| | ) | |
| Appellee. | ) | |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Stephanie E. Joannides, Judge.

Appearances: Dianne Olsen, Law Office of Dianne Olsen, Anchorage, for Appellant Amber B. (Mother). Christi A.

---

\*      Entered pursuant to Appellate Rule 214.

Pavia, Pavia Law Office LLC, Anchorage, for Appellant Arlene B. (Grandmother). Megan R. Webb, Assistant Attorney General, Anchorage, and Richard Svobodny, Acting Attorney General, Juneau, for Appellee. Anita Alves, Assistant Public Advocate, and Richard Allen, Public Advocate, Anchorage, Guardian Ad Litem.

Before: Carpeneti, Chief Justice, Fabe, Winfree, and Stowers, Justices.

1. This consolidated appeal arises from a parental rights termination trial involving two Indian children.[1] The affected appellants are the mother, whose parental rights were terminated after trial,[2] and the maternal grandmother. Before and during most of the trial the grandmother was considered the children's Indian custodian by all parties,[3] but her Indian custodian status was rejected by the superior court after trial. The mother contends on appeal that the superior court erred in making the factual findings necessary for the termination of her parental rights,[4] and in determining that,

---

[1] *See* 25 U.S.C. § 1903(4) (2006) (defining "Indian child" for purposes of the Indian Child Welfare Act (ICWA)).

[2] The father did not appeal the termination of his parental rights.

[3] ICWA defines an "Indian custodian" as "any Indian person who has legal custody of an Indian child under tribal law or custom or under State law or to whom temporary physical care, custody, and control has been transferred by the parent of such child." 25 U.S.C. § 1903(6) (2006); *see also* CINA Rule 2(i).

[4] To terminate parental rights to an Indian child the superior court must first find by clear and convincing evidence that a child is in need of aid under one of the grounds set forth in AS 47.10.011. AS 47.10.088(a)(1); CINA Rule 18(c)(1)(A). Second, the court must find by clear and convincing evidence that the parent has failed to remedy the conduct or conditions placing the child at a substantial risk of harm. AS 47.10.088(a)(2); CINA Rule 18(c)(1)(A)(i). Third, the court must find by clear and convincing evidence that OCS made "active efforts" to provide remedial and

(continued...)

relative to this case, the grandmother had never been the children's Indian custodian. The grandmother separately appeals the superior court's determination that, relative to this case, she had never been the children's Indian custodian. Both the mother and the grandmother contend that because the grandmother was the Indian custodian when the children were removed from the grandmother's care and custody, the mother's parental rights cannot be terminated unless and until the grandmother's Indian custodian rights have been revoked or terminated.

2. We have reviewed the record and considered the parties' arguments regarding the superior court's termination of the mother's parental rights. We conclude substantial evidence supports each finding by the required burden of proof, and, therefore, the superior court did not clearly err in reaching the findings required for termination.[5] If this were the only issue on appeal, we would affirm the superior court's decision to terminate the mother's parental rights. But resolution of the Indian custodian issue is more difficult, and it may impact the validity of the decision to terminate the mother's parental rights.

3. Shortly after the children were taken into custody by the State of Alaska, Department of Health and Social Services, Office of Children's Services (OCS)

---

[4] (...continued)
rehabilitative programs to prevent the breakup of the Indian family. 25 U.S.C. § 1912(d) (2006); CINA Rule 18(c)(2)(B). Fourth, the court must find by a preponderance of the evidence that termination of parental rights is in the child's best interests. AS 47.10.088(c); CINA Rule 18(c)(3). Lastly, the court must find by evidence beyond a reasonable doubt, including expert testimony, that continued custody of the child by the parent or Indian custodian is likely to result in serious emotional or physical damage to the child. 25 U.S.C. § 1912(f) (2006); CINA Rule 18(c)(4).

[5] *See Pravat P. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 249 P.3d 264, 269-70 (Alaska 2011) (stating superior court's factual findings, including those required for termination of parental rights, are reviewed for clear error).

in March 2008, OCS met with the mother and grandmother and determined that because the children had been living with the grandmother for some time before OCS took custody, the grandmother was the children's Indian custodian and entitled to ICWA rights and protections.[6] Based on this agreement, the court appointed counsel to represent the grandmother.[7] For more than two years, without question or objection by any party, the grandmother participated in the proceedings as an Indian custodian, including entering into court stipulations, participating in OCS's case plans for reunification of the Indian family, and receiving OCS services intended to remedy the concerns that rendered the children in need of aid.

4. The termination trial began on May 3, 2010. The termination petition, filed in September 2009, had made no mention of the grandmother as Indian custodian or whether or how such status would affect termination of the parents' rights. The mother and grandmother's attorney filed a trial brief indicating that OCS's failure to address the Indian custodian's rights precluded the termination of the mother's parental rights.[8] OCS's attorney responded in his opening statement that although "it was acknowledged at the beginning of the case" that the grandmother was an Indian custodian, the grandmother's status as Indian custodian was "essentially dissolved" when the parents had asserted that they "wanted to work toward reunification and get their children back." He then argued there was no role for an Indian custodian in a parental

---

[6] *See Pam R. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 185 P.3d 67, 69 n.6 (Alaska 2008) (setting out various rights of an Indian custodian).

[7] *See* 25 U.S.C. § 1912(b) (2006) (giving Indian custodian right to court-appointed counsel if indigent); *see also* CINA Rule 12(b)(1).

[8] The mother and grandmother were represented by the same attorney at the termination trial.

rights termination trial, that OCS was not required to terminate the grandmother's rights as an Indian custodian, and that if the parents' rights were terminated, the grandmother's Indian custodian rights would terminate as well. The mother and grandmother's attorney stated their position that the children should be returned to the grandmother as the Indian custodian. The father's attorney argued OCS had no legal authority to support its contention that the parents' participation in an OCS case plan dissolved the Indian custodianship, and OCS was required to address the grandmother's Indian custodian rights. The trial court stated that it was "not prepared to address the Indian custodian legal argument" and suggested the trial proceed. The court later stated it might request further briefing on the issue, but it "preliminarily" appeared the grandmother "was acting as the Indian custodian" at the time OCS assumed custody of the children. The court also stated OCS "really needs to address the placement with the grandmother, why the removal was made and . . . what active efforts have been made with respect to her home."

5. Based on the pretrial briefing and the parties' opening statements, the Indian custodian issues to be resolved at the trial were: (1) whether the parents' efforts at reunification terminated the Indian custodianship; and (2) if the grandmother remained an Indian custodian, what effect her custodianship would have on OCS's efforts to terminate the parents' rights. On the third day of trial the court questioned what would happen if it found that the grandmother was an Indian custodian and there was sufficient evidence to terminate the parents' rights but not the Indian custodian's rights (because of OCS's lack of active efforts with respect to the grandmother).[9] The mother and grandmother's attorney responded that the parents' rights could not be terminated if the Indian custodian's rights were not terminated. The court confirmed it understood the mother and grandmother's position that even if "there's sufficient basis

---

[9] *See* note 4, above.

to terminate both parents' parental rights . . . I can't even get there unless I find sufficient basis . . . that the grandmother's an unfit custodian." OCS's attorney then explained that OCS believed the grandmother was not an Indian custodian anymore. He added that although "perhaps [OCS] was a little hasty in conceding that she was an Indian custodian" when the case started, "we're kind of I think perhaps stuck with that, [because] . . . when the [S]tate makes a concession early on in the case, that kind of becomes our position. And that's fine." He then reiterated OCS's argument that when the parents began to work with OCS towards reunification with their children, "that act essentially dissolved the Indian custodianship." He also argued "nothing in the law . . . suggests that an Indian custodian's rights must be legally terminated in the same fashion that a parent's rights are terminated," and that on the facts of the entire case OCS did provide active efforts towards the grandmother.

6.      After that discussion OCS did not change its position at any time during the presentation of evidence, even though some evidence presented at trial was relevant and perhaps contrary to the initial determination, over two years earlier, that the grandmother was the children's Indian custodian. The grandmother presented no evidence at trial, relying on her then-uncontested status as the Indian custodian at the time the children were removed by OCS and her legal positions that: (1) her Indian custodian rights had not been revoked or dissolved; (2) OCS had not made a case for termination of her Indian custodian rights, particularly on the active efforts prong for such a termination; and (3) OCS therefore could not terminate the parents' rights.

7.      OCS asserted the grandmother had never actually been an Indian custodian for the first time during closing arguments. OCS also maintained its earlier, but now alternative, argument that the Indian custodianship had dissolved when the parents came forward to work with OCS towards reunification with the children. Finally, OCS argued that despite a conceded weakness in OCS's active efforts towards the

grandmother, there was sufficient evidence in the record to support terminating her Indian custodian rights under the framework for terminating parental rights. The mother and grandmother's attorney and the father's attorney responded that the grandmother's initial Indian custodianship had never been questioned prior to or during trial. During colloquies with the court, they maintained their legal positions that if the Indian custodianship had not been revoked or terminated in the same fashion as parental rights, the parents' rights could not be terminated and the children should be returned to the Indian custodian.

8.      The superior court ultimately ruled that the grandmother had never been the children's Indian custodian and terminated the parents' parental rights. The court noted that in light of its ruling it did not need to decide whether OCS had made active efforts towards the grandmother.

9.      The mother and grandmother argue on appeal that their due process rights were violated, or at least that they were subjected to prejudicial unfairness, when the court ruled on an issue that was not questioned or contested for the two years preceding trial, was not raised as an issue by OCS at the beginning of trial, was conceded again by OCS mid-trial, and was raised by OCS for the first time in its closing argument. OCS argues that the issue was tried by consent. We believe the mother and grandmother have the better argument.[10]

---

[10]      *See generally Bruce L. v. W.E.*, 247 P.3d 966, 976-78 (Alaska 2011) (concluding trial court abused its discretion in concluding child was not an Indian child without giving parties notice that it considered the issue in dispute); *Alderman v. Iditarod Props., Inc.*, 32 P.3d 373, 394-97 (Alaska 2001) (finding trial court abused its discretion by allowing plaintiff to amend pleadings to add cause of action after close of evidence because defendants were prejudiced by not presenting evidence regarding damages on new claim during trial and by inability to present similar evidence after plaintiff's amendment).

10.     We must remand for a new trial on any and all issues relating to the grandmother's status as an Indian custodian, including whether the grandmother was an Indian custodian by tribal custom or by the parents' temporary transfer of custody.[11] We recognize the paucity of legal authority setting out standards for determining Indian custodian status based on the temporary transfer of custody,[12] and we encourage the superior court to invite the tribe to actively participate in the briefing on that question as well as the question of tribal custom. Because these issues are not before us, we do not reach any of the questions raised at trial regarding the effect of an existing Indian custodianship on OCS's ability to seek the termination of parental rights; we recognize the paucity of legal authority on these questions, as well. Accordingly, even though we see no legal error in the parental rights termination findings, we must leave the ultimate validity of the superior court's termination decision open for the superior court's further proceedings on the Indian custodian issues. We do not mean to suggest that the trial on remand should revisit issues relating to the termination of the parents' rights, except to the extent the termination decision is impacted by the superior court's ultimate decision on the Indian custodianship issues. We encourage the superior court to make detailed findings of fact and conclusions of law to assist if any further appellate review is necessary.

11.     In light of this decision we must VACATE the order terminating the parents' rights pending resolution of the Indian custodianship issues. We recognize that

---

[11]     *Cf.* note 3, above.

[12]     *See Pam R.*, 185 P.3d at 71 (noting no ICWA authority but noting some relevant non-ICWA state law authority); *cf. In re G.L.*, 99 Cal. Rptr. 3d 356, 364-65 (Cal. App. 2009) (finding Indian custodianship created by parents' temporary transfer of physical care and custody of child, regardless of parents' motivation and lack of signed writing, and rejecting argument to apply "nature, frequency, and duration" analysis to custodianship designation) (issued after *Pam R.*).

the children are held in limbo during the resolution of the issues on remand, and, although we are confident the superior court will do so anyway, we urge it to expeditiously set a trial on the issues remanded. We do not retain jurisdiction.